UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

JODI L. WAGNER,

        Debtor.

Case No. 09-33103

Chapter 7

_____

MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT
_____

      This matter came before the Court on the debtor's objection to the trustee's motion to compromise claim. After preliminary hearings on the matter were held on January 6, 2015, and February 18, 2015, both parties filed motions for summary judgment and briefs supporting their respective positions. This Court has jurisdiction under 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A). This decision constitutes the Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

## BACKGROUND

      The facts relevant to this motion are not in dispute. The debtor filed a no asset chapter 7 bankruptcy case on September 10, 2009, and received a discharge on February 3, 2010. Prior to filing her case, on February 5, 2009, the debtor received a total hip replacement using the ASR Hip System. In the schedules listing the debtor's assets, she did not disclose a claim or potential claim regarding the hip replacement device. The trustee filed a no asset report on November 6, 2009, and the case was closed on February 3, 2010.

      According to the debtor's affidavit (Doc. #55), around September of 2010 – approximately one year after the debtor had filed her bankruptcy petition – the debtor learned that a small number of people who had received her particular hip implant device were experiencing problems with their device and that DePuy Orthopaedics, Inc., issued a recall of the device on

August 24, 2010. The debtor's doctor contacted her in September of 2010 and recommended that she undergo some medical tests. On November 5, 2010, the debtor had an MRI and some lab work performed to check the condition of the hip replacement device. The MRI did not reveal any abnormalities. The lab work indicated a slightly elevated cobalt level in her blood, but there was no evidence, such as fluid collection, mass, pseudo cyst formation, or lesion that would have indicated that she would need hip revision surgery. While there may have been some indication at that time that the device was starting to fail, her orthopedic doctor did not recommend surgery following the outcome of the initial MRI and lab work. The debtor subsequently obtain a bone scan on November 22, 2010, which also did not reveal any problem with the hip implant device. After later meeting with her doctor on December 7, 2010, the debtor was informed for the first time that she may need hip revision surgery. She had that surgery on January 14, 2011. The debtor incurred additional post-bankruptcy medical costs associated with the hip revision surgery which she has been unable to pay.

The debtor retained Cannon & Dunphy, S.C., to pursue claims against DePuy for damages incurred as a result of the hip replacement. The firm represented the debtor in the U.S. ASR Hip Settlement Multidistrict Litigation (MDL), in the District Court of the Northern District of Ohio. In the debtor's Abbreviated Short Form Complaint, the following allegation was made:

> On or about February 5, 2009, Plaintiff, Jodi Wagner, suffered the following personal and economic injur(ies) as a result of the implantation with the ASR hip implant: past and future pain, suffering, disability and loss of enjoyment of life; past and future medical expenses, past and future wage loss and impairment of earning capacity; and other compensable injuries and damages.

(Abbreviated Short Form Complaint for DePuy Orhtopaedics, Inc. ASR Hip Implant Products Liability Litigation, dated November 19, 2012, N.D. Ohio, MDL No. 1:10-md-2197, ¶ 7).

An MDL Settlement Agreement was reached on November 13, 2013, wherein a U.S.

HSR Settlement Program was established to compensate eligible claimants. Through personal injury counsel, the debtor was offered a Gross Settlement award. In order to participate in the Settlement Agreement, she is required to provide a release for any additional claim for damages, including medical costs she may incur in the future. Only those people who have actually had hip revision surgery are eligible to participate in the Gross Settlement Agreement. Persons who had a hip replacement using the hip implant device at issue, but who have not had the hip revision surgery, are not eligible to participate in the Gross Settlement Agreement. In addition to the Gross Settlement, the debtor is seeking additional damages under the Extraordinary Injury Fund established by the Settlement Program.

On September 5, 2014, the United States Trustee moved to reopen the case, seeking to allow the chapter 7 trustee to administer the settlement proceeds for the benefit of the bankruptcy estate's creditors. The case was reopened on September 23, 2014, and the trustee filed a Notice of Recovery of Assets and Opportunity to File Proof of Claim. The trustee subsequently filed a Motion to Compromise Claim in order to accept the terms of the HSR Settlement Program relative to the debtor's claim. The debtor opposed the motion, seeking a determination that her right to participate in the Settlement Agreement is not property of the estate. It does not appear that either party wishes to pursue a claim independent of the MDL settlement. The debtor and the trustee both filed motions for summary judgment regarding the motion to compromise.

## ARGUMENTS

*The Debtor's Arguments.*

The debtor argues the cause of action relating to the defective medical device is not property of the estate because it was not property of the debtor "as of the commencement of the case." 11 U.S.C. § 541(a)(1). State law determines property rights, and the debtor had not

3

sustained any damages – an essential element of a product liability cause of action – as of the petition date, September 10, 2009.  *See* Wis. Stat. § 895.047(1)(e).  "In Wisconsin, a plaintiff does not have a personal injury claim until he or she has suffered 'actual' injury or damage.  Increased risk of future harm is not an actual injury under Wisconsin law." *Alsteen v. Wauleco, Inc.*, 2011 WI App 105, ¶ 2, 335 Wis.2d 473, 476, 802 N.W.2d 212 (Ct. App. 2011).  A plaintiff cannot sue for speculative or conjectural damages.  *See Sopha v. Owens-Corning Fiberglass Corp.*, 230 Wis.2d 212, 601 N.W.2d 627(1999) (finding even though plaintiff was aware of asbestos exposure at earlier date, cause of action for mesothelioma did not accrue until after he actually developed mesothelioma).

      To determine when a cause of action accrues, Wisconsin has adopted the "discovery rule," wherein "tort claims accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first."  *Hansen v. A.H. Robins Inc.*, 113 Wis.2d 550 ,335 N.W.2d 578, 581 (1983).  The first day by which the debtor could have reasonably discovered that there may have been a product defect with respect to her hip implant device would have been September of 2010, when she first learned that a small number of persons were experiencing problems with their devices and that there had been a product recall in August of 2010 for those persons experiencing problems.  Her own problems were not discovered until even later.  Some courts have found that when certain negligent acts occurred before the bankruptcy, but the injury did not occur until postpetition, the resultant cause of action was not property of the estate.  *See In re Holstein*, 321 B.R. 229 (Bankr. N.D. Ill. 2005); *In re Smith*, 293 B.R. 786 (Bankr. D. Kan. 2003); *In re Swift*, 198 B.R. 927 (Bankr. W.D. Tex. 1996).

      The debtor's statement in the MDL Complaint – "On or about February 5, 2009, Plaintiff, Jodi Wagner, suffered the following personal and economic injur(ies) as a result of the

4

implantation with the ASR hip implant" – is not a factual admission. The language "[o]n or about [date], Plaintiff suffered ..." was language required to participate in the litigation and could not be altered. The allegation is not an admission that on the date of the hip implant surgery the debtor suffered injuries sufficient to give rise to a cause of action for the damages associated with her subsequent hip revision surgery.

Additionally, the debtor points out that had she not undergone the hip revision surgery in January of 2011, she would not be eligible to participate in the Settlement Agreement. The debtor is required to execute a release requiring her to waive any other rights to recovery for additional damages, including medical expenses that she may incur as a result of the hip revision surgery. The debtor suffered through a hip revision surgery that included a great deal of pain, followed by a long period of recuperation, during which the debtor was unable to work. She currently has some outstanding medical bills associated with the surgery that would not be paid by the trustee because they were incurred postpetition and are not claims against the estate. Allowing the trustee to administer the asset would result in a windfall to the estate's creditors to the detriment of the debtor and her post-bankruptcy creditors. The policy considerations of finality, fairness, and a fresh start all support the proposition that a cause of action that accrues after the filing of the bankruptcy is not property of the bankruptcy estate.

*The Trustee's Arguments*.

The trustee argues as a matter of bankruptcy law that the claim existed prior to the date of filing and is property of the estate regardless of whether the debtor knew or should have known of the claim's existence. Thus, there is no material issue of fact, and the trustee is entitled to summary judgment. If, on the other hand, the Court finds, as a matter of law, the claims existing prior to the date of filing are property of the estate only if the debtor knew or should have known

of the claim's existence, then the debtor's knowledge is a material issue of fact that requires additional discovery.

Section 541 of the Code defines "property of the estate" broadly. *Matter of Carousel Int'l Corp.*, 89 F.3d 359, 362 (7th Cir. 1996). A products liability claim is considered a legal or equitable interest that is subject to section 541. *See, e.g., Matter of Geise*, 992 F.2d 651, 655 (7th Cir. 1993). Accrual for the purposes of whether a cause of action is property of the estate "is different from accrual for statute-of-limitations purposes," *Tyler v. DH Cap. Mgmt., Inc.*, 736 F.3d 455, 463 (6th Cir. 2013), and "'the test is whether all of the elements of the cause of action had occurred as of the time that the bankruptcy case was commenced.'" *In re Webb*, 484 B.R. 501, 504 (Bankr. M.D. Ga. 2012) (quoting *In re Alipour*, 252 B.R. 230, 235 (Bankr. M.D. Fla. 2000)). This would make the claim property of the estate even though the injury had not been discovered for the purpose of causing the state statute of limitations to run.

Additionally, case law has held that a cause of action accruing after the commencement of the bankruptcy case may be property of the estate if the claim is "sufficiently rooted in the pre-bankruptcy past and so little entangled with the [debtor]'s ability to make an unencumbered fresh start." *Segal v. Rochelle*, 382 U.S. 375, 380, 86 S.Ct. 511 (1966). The Seventh Circuit has affirmed the continued application of *Segal's* definition of what is included in the bankruptcy estate. *In re Meyers*, 616 F.3d 626, 628 (7th Cir. 2010). Likewise, Wisconsin state courts have held that accrual "'is not always critical in deciding whether a cause of action will be 'property of the estate.'"" *Williamson v. Hi-Liter Graphics, LLC*, 2012 WI App 37, ¶ 13, 340 Wis. 2d 485, 494, 811 N.W.2d 866, 871 (quoting *In re Strada Design Assocs., Inc.*, 326 B.R. 229, 236 (Bankr. S.D.N.Y. 2005)).

The trustee contends the claim, as it relates to the bankruptcy estate, is not for the

6

postpetition hip revision surgery, but rather for the defective hip that was implanted prepetition. The debtor was injured by the hip implant prior to the filing of the bankruptcy petition and all damages relating to the injury, including the hip revision surgery, are derivative actions falling under section 541, notwithstanding when the original claim was discovered. *Cf. In re Webb*, 484 B.R. at 502, 505. Furthermore, the debtor stated in her MDL Complaint, filed in 2012, that she suffered personal and economic injuries as a result of the implantation with the ASR hip implant on or about February 5, 2009. (*See* Abbreviated Short Form Complaint for DePuy Orthopaedics, Inc., ASR Hip Implant Products Liability Litigation, dated November 19, 2012, N.D. Ohio, MDL No. 1:10-md-2197, ¶ 7). Since the debtor represented in the MDL that she had a claim as of the date of the hip replacement surgery, she cannot now argue that the claim did not exist when she filed the bankruptcy petition seven months later.

The trustee further points out that, since the claim is property of the estate, the trustee – not the debtor – has the right to release or waive claims for future damages. Allowing the debtor to keep the proceeds would, from a general perspective, encourage debtors to hide behind the discovery rule, and, from a case specific perspective, remove property from the bankruptcy estate causing a windfall to the debtor and postpetition creditors. In fairness, the debtor is entitled to exempt a portion of the settlement proceeds for the payment related medical bills and other expenses related to the hip revision surgery.

## DISCUSSION

Summary judgment should be granted if the movant can establish that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552 (1986). Material facts are those that "might affect the outcome of the suit" and "[f]actual disputes that are

irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). In analyzing the pleadings and the evidence, the Court reviews the record in the light most favorable to the nonmoving party and must afford that party all reasonable inferences. *Anderson*, 477 U.S. at 252. Nevertheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986). Here, the trustee asks the court to determine property of the estate as a matter of law based on the uncontested fact that the initial hip replacement surgery occurred prepetition; however, if the discovery rule is the determining factor in whether a claim is property of the estate, the trustee does not concede that the debtor's discovery of the injury was postpetition, but alleges that further discovery is necessary.

Filing a chapter 7 petition creates a bankruptcy estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "[V]irtually all property of the debtor" at the time he or she files for bankruptcy becomes property of the bankruptcy estate.[1] *Matter of Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993); *see also United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 103 S.Ct. 2309, 2313 (1983) (noting "Congress intended a broad range of property to be included in the estate"). Generally, a cause of action is considered property of the bankruptcy estate if the claim existed at the

---

[1] While technically not a turnover action, the burdens of persuasion set forth in *In re Meyers*, 616 F.3d 626, 629 (7th Cir. 2010), would be applicable here: The trustee must bring the action to claim property for the bankruptcy estate, and he bears the burden of establishing a *prima facie* case for turnover. Once a *prima facie* case is established, the debtor must provide a reason for excepting the property from the estate, but the ultimate burden of persuasion remains with the trustee at all times. *Id*. (citations omitted).

8

commencement of the filing and the debtor could have asserted the claim on his or her own behalf under state law. *Matter of Geise*, 992 F.2d 651, 655 (7th Cir. 1993). The trustee appointed in chapter 7 cases, alone, has authority to administer and dispose of property within the bankruptcy estate. *See* 11 U.S.C. §§ 541(a)(1), 704(1). This exclusive authority includes the right to pursue the debtor's prepetition causes of action. 11 U.S.C. § 323; *cf. Matter of Perkins*, 902 F.2d 1254, 1257-58 (7th Cir. 1990). Property a debtor acquires postpetition, however, belongs to the debtor. *See generally* 11 U.S.C. § 541(a) (defining property of estate by reference to debtor's interests as of petition date, except for limited types of property that debtor acquires within 180 days after petition date).

While federal law determines when a debtor's interest in property is property for purposes of section 541, state law governs whether the debtor has such an interest. *Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 1389 (1992); *Butner v. United States*, 440 U.S. 48, 54-55, 99 S.Ct. 914, 918 (1979). Therefore, Wisconsin law will be considered when assessing the various approaches courts have employed to determine whether similar causes of action are property of the estate.

The Bankruptcy Code does not indicate how a court should determine whether a claim is sufficiently matured as of "the commencement of a case" to constitute an "interest of the debtor in property." 11 U.S.C. § 541(a)(1). Consequently, courts and litigants have applied competing theories, generally encompassing (1) when the claim accrued and (2) whether or not the claim is "sufficiently rooted in the pre-bankruptcy past" of the debtor. Both approaches will be addressed, in turn.

In most personal injury cases, determining exactly when an enforceable claim arises is not difficult because the elements necessary to state a claim occur at about the same time: a

9

defendant's act causes a legally cognizable harm. *See* Dan B. Dobbs, et al., *Dobbs' Law of Torts* § 242 (2d ed., updated 2014). When an individual is exposed to a defective medical product, however, the wrongful act often does not result immediately in an appreciable injury, and the plaintiff will often manifest symptoms of a harm only after a period of time. In fact, exposure to a defective medical device does not result in harm in all persons, and at the outset it is impossible to determine which persons will be negatively affected by the device. As a result, for many plaintiffs, their damage is only a *possibility* immediately after the medical procedure. As evident from the case law, the latency period between the act and the injury contributes to the difficulty both doctors and lawyers experience when determining the date of actual harm. *See id*. at § 248.

Although general tort principles assume the date of injury coincides with the moment the action is enforceable, courts have recognized the practical impossibility of maintaining an action for a physical harm that is inherently unknowable. Because of such unusual characteristics of the harm – namely, the medical impracticability of pinpointing a date when a defective medical device actually produces a physical harm – courts have had to re-examine the assumption that a tort action arises at one definitive moment of injury. *See generally* 54 C.J.S. *Limitations of Actions* §§ 231, 232 (updated 2015). Tying accrual of a claim to the precise date of injury is further problematic when the plaintiff's injury arises over a period of time, making it nearly impossible to determine the premise moment when the latent condition ripened into a legally compensable injury. *See id*.

*The Claim Accrual Approach*.

The accrual theory is based on the general principle that a cause of action cannot arise until it becomes legally enforceable. *Cf. Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis. 2d 302, 315, 533 N.W.2d 780 (1995) (noting "a cause of action accrues when there exists a claim capable

10

of enforcement, a suitable party against whom it may be enforced, and a party with a present right to enforce it"). Because an individual cannot state a claim until he or she suffers a provable harm due to an identifiable wrongful act, the claim does not arise until these elements are discoverable. Recognizing that claimants with inherently unknowable injuries are simply incapable of filing premature claims, Wisconsin courts have applied the "discovery rule." *E.g.*, *Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 560, 335 N.W.2d 578, 583 (1983). In *Hansen*, the court disposed of its prior rule that tort claims accrue on the date of injury: "Most often a claimant is aware of an injury when it occurs ... however in some instances ... the negligence may cause an injury which is initially latent .... Using the date of injury as the benchmark for accrual of claims can yield extremely harsh results." 113 Wis. 2d at 554-56. Driven by considerations of fairness and justice, the *Hansen* court adopted the discovery rule and held that a cause of action accrues when the injury is discovered or, in the exercise of reasonable diligence, should have been discovered. Thus, the debtor's claim for damages caused by her initial hip replacement did not accrue under Wisconsin law until after she filed her bankruptcy petition.

The state supreme court continued to affirm and apply the discovery rule in a variety of subsequent tort cases involving personal injury. *See, e.g., Sopha v. Owens-Corning Fiberglass Corp.*, 230 Wis. 2d 212, 228-29, 601 N.W.2d 627, 635 (1999) ("Allowing claims to proceed when claimants file within three years of discovering an asbestos-related malignancy, as opposed to trying damages for the risk or fear of cancer when the first effects of exposure to asbestos appear, promotes the development of more accurate factual records for deciding damages."); *Spitler v. Dean*, 148 Wis. 2d 630, 632, 436 N.W.2d 308 (1988) (clarifying in intentional tort case that claim under discovery rule does not accrue until plaintiff knows or with reasonable diligence should know identity of tortfeasor); *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 411, 388 N.W.2d

11

140 (1986) (refining discovery rule in case involving personal injury resulting from defective furnace to mean cause of action accrues when plaintiff discovers that injury was probably caused by defendant's product or conduct); *Cf. Claypool v. Levin*, 209 Wis. 2d 284, 287-88, 562 N.W.2d 584 (1997) (applying, but not allowing, a claim for medical malpractice).

Using the "discovery rule" to determine the accrual date of a claim, nevertheless, is not without detractors. The Fifth Circuit envisioned the following problematic scenario:

> Consider a case of medical malpractice in which the treating physician has left a dangerous metal instrument inside the body of his patient. At the time the doctor finishes the surgery, the doctor has completed a tort. He has violated a legal duty owed to the patient, and the patient was injured by that violation. If the patient instituted suit at this moment, his suit would be viable. The statute of limitations has not begun to run, however. Under the discovery rule, the statute of limitations is tolled until the patient either discovers or should have discovered that an injury has occurred. This example shows that the dates of accrual and the start of the running of the statute of limitations may vary greatly. Unfortunately, many cases applying the principles of the discovery rule are written in terms of accrual.

*Matter of Swift*, 129 F.3d 792, 796 (5th Cir. 1997).

Under pressure from an increasing volume of latent disease or injury cases, bankruptcy courts around the country have struggled with the appropriate treatment of claims undiscovered at the commencement of the bankruptcy case. For instance, in *In re Smith*, 293 B.R. 786 (Bankr. D. Kan. 2003), the trustee moved to reopen the debtor's case so that he could administer the settlement recovery of a class action lawsuit related to the diet drug Fen Phen. The court denied the trustee's motion, finding that, even assuming that the debtor was injured by her use of the drug, when she filed her bankruptcy case she did not, under Kansas law, hold an accrued cause of action for her injuries. Although the debtor had taken the drug prepetition before it was banned, she was asymptomatic when she discontinued its use and filed her bankruptcy case. The trustee failed to demonstrate that the debtor could reasonably have ascertained at the commencement of

12

her case that she had been injured by the drug, instead showing, at best, that the debtor could have reasonably ascertained two years after her case was closed that the drug had injured her. This is similar to the allegations of the debtor in this case.

*The Rooted in Pre-Bankruptcy Past Approach.*

Other courts have favored a different approach, wherein state law determinations regarding the timing of accrual do not affect whether causes of action are property of the estate; instead, that analysis is governed by bankruptcy law. Under the prior Bankruptcy Act, the Supreme Court stated that the test for determining whether after-acquired property is property of the estate is whether the property is "sufficiently rooted in the pre-bankruptcy past and so little entangled in the bankrupt's ability to make an unencumbered fresh start that it should be regarded as 'property' under s[ection] 70a(5)." *Segal v. Rochelle*, 382 U.S. 375, 380, 86 S.Ct. 511, 515 (1966).

Under the "rooted" concept, the mere fact that an element of a cause of action accrued postpetition is not dispositive of whether the cause of action is included in the property of the estate. The significance of the postpetition element, in relation to all other facts and circumstances, should instead be considered along with the timing of the conduct giving rise to the claim for damages. *See, e.g., In re Simmons*, 520 B.R. 136 (Bankr. M.D. Fla. 2014) (while element of debtors' cause of action against insurer for its bad faith in settling property damage claim for amount sufficient to repair sinkhole damage to debtors' home accrued postpetition, claim was sufficiently rooted in debtors' prebankruptcy past that claim was included in property of the estate).

In *In re Webb*, 484 B.R. 501 (Bankr. M.D. Ga. 2012), the bankruptcy court agreed to reopen the case following the debtor's receipt of a postpetition class action settlement award.

13

The debtor had been diagnosed prepetition with a congestive heart condition. Unbeknownst to him at the time he filed the bankruptcy case, the condition was allegedly caused by his prepetition use of a particular medication, and the debtor learned postpetition, via a television commercial, of the medication's purported role in causing his condition. The court found the products liability claim was sufficiently rooted in the debtor's prepetition past to be included in the "property of the estate," even though the statute of limitations on the claim had not yet begun to run when the petition was filed. The court determined that the discovery rule that courts apply in deciding when a statute of limitations on a cause of action begins to run is not applicable in determining whether a cause of action is included in the property of the estate. *Webb* is distinguishable for the debtor's case in that the *Webb* plaintiff knew he was injured, but he did not know it was possibly caused by the defendant's product; the debtor's position is that she was not injured at all prepetition.

In another case, the debtor's claim for asbestos-related injuries was included in "property of the estate," even though his asbestos-related injuries were not diagnosed, and thus his ability to sue under Michigan law did not accrue, until after the bankruptcy petition was filed. *In re Richards*, 249 B.R. 859 (Bankr. E.D. Mich. 2000). The cause of action was sufficiently rooted in the debtor's prebankruptcy past, where it appeared likely that both the onset of the debtor's disease and a greater portion of its progress had already occurred prepetition. Thus, there was an undiscovered prepetition injury.

Under the "rooted" approach, the extent of a claim's accrual as of the petition date is clearly relevant to determining the extent of its prepetition roots, but it is not the only factor and not necessarily a dispositive one. A claim will not be deemed property of the estate just because it has prepetition roots. *See In re Riccitelli*, 320 B.R. 483 (Bankr. D. Mass. 2005) (finding it is

14

not enough that cause of action has some prepetition roots, however attenuated, if it is not sufficiently rooted in prebankruptcy past). *Segal* requires not just some prepetition roots, but that the cause of action be "*sufficiently* rooted in the prebankruptcy past." *Segal v. Rochelle*, 382 U.S. at 379-80, 86 S.Ct. at 515 (emphasis added). In fact, one bankruptcy court was highly critical of the "sufficiently rooted in prebankruptcy past" theory, as applied to a debtor's cause of action, contending that such broad reading of what constitutes property of the estate:

> is not consistent with *Butner* [*v. United States*, 440 U.S. 48, 99 S.Ct. 914 (1979),] or with the plain language of section 541(a)(1). Under *Butner* (and a host of other decisions, ...), a debtor's property interests in bankruptcy are established by state law. Under section 541(a)(1), those interests become property of the estate only if they exist as of the commencement of the case. [T]o include in the bankruptcy estate, not just causes of action a debtor has when the case commences, but also causes of action accruing post-petition if they are "sufficiently rooted in the pre-bankruptcy past," gives courts two alternatives: disregard the clear temporal line drawn in section 541(a)(1), or ignore state law establishing the causes of action in question. Neither alternative is acceptable.

*In re Holstein*, 321 B.R. 229, 238 (Bankr. N.D. Ill. 2005) (citations omitted).

In the case of injuries that are potential but not certain, the "discovery rule" adopted by the state of Wisconsin is the fairer and more predictable rule in determining whether a claim is property of the estate. A bankruptcy debtor cannot be expected to predict and disclose possible future injury by each and every product he or she has previously used. To be rooted in the debtor's prebankruptcy past, there is no way of knowing how far back the root would go. Asbestos exposure may have been many years before the injury; a defective hip replacement, perhaps not as long. Property of the estate is generally what exists on the date of filing, and the claim is not compensable until there is an injury; it follows that the trustee has nothing to pursue when there is no discernable injury on the date of filing. The discovery rule provides that the claim arises when the claimant knew or should have discovered it, so the rule cannot be circumvented by the debtor who in bad faith puts off diagnosis or treatment for a known

15

compensable injury until after the bankruptcy petition. Therefore, the trustee's motion for summary judgment is denied. Nevertheless, whether the debtor knew of her injury or exercised reasonable diligence in discovering it is a matter for trial – or at the least, additional discovery – and cannot be decided on summary judgment, so the debtor's motion for summary judgment must also be denied.

*The Doctrine of Judicial Estoppel*.

Finally, the trustee argues because the debtor represented in the MDL that she had a claim as of the date of the original hip replacement surgery, she cannot now argue that the claim did not exist when she filed the bankruptcy petition seven months later. "Judicial estoppel is a doctrine intended to prevent perversion of the judicial process." *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990). It applies to prevent a party that has taken one position in an earlier legal proceeding from maintaining a position inconsistent with the prior position in a subsequent legal proceeding. *Id*. There is no hard and fast or ready formula for determining the proper circumstances under which judicial estoppel is to be applied. *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992). However, the Seventh Circuit has set forth some boundaries or limits for the application of judicial estoppel.

First, the later position must be clearly inconsistent with the earlier position. The debtor stated in her MDL Complaint that she suffered personal and economic injuries as a result of the implantation with the ASR hip implant on or about February 5, 2009. (*See* Abbreviated Short Form Complaint for DePuy Orthopaedics, Inc., ASR Hip Implant Products Liability Litigation, dated November 19, 2012, N.D. Ohio, MDL No. 1:10-md-2197, ¶ 7). Now, she claims the allegation is not an admission that on the date of the hip implant surgery she suffered injuries sufficient to give rise to a cause of action for the damages associated with her subsequent hip

revision surgery. This appears to be an inconsistency, but the debtor stated this was just a necessary form and not a substantive assertion. The second element of judicial estoppel requires that the facts at issue be the same in both cases. While the facts in the MDL action and the bankruptcy here are the same, the *issue* is not. The issue in the MDL action is whether the debtor's injury was compensable; here the issue is who gets the money. Third, the party to be estopped must have convinced the first court to adopt its position. *Id*. at 264–65 (citations omitted).[2] The allegations in the debtor's complaint, as well as additional proof, were accepted by the MDL court, and they are accepted by this Court, i.e., the maker of the hip replacement is liable for injuries caused by the defect. The debtor's position with respect to this issue is consistent in both actions. Finally, the subsequent position must be intentionally inconsistent with the prior position. *Cassidy*, 892 F.2d at 641. Again, there is no inconsistency. The debtor attempted in her complaint to hold the defendant in the MDL litigation liable for its defective product; whether any damages are property of the estate is not inconsistent with the liability of that defendant.

Although judicial estoppel "is to be applied where 'intentional self-contradiction is being used as a means of obtaining unfair advantage,' " it should not be applied "where it would work an injustice, such as where the former position was the product of inadvertence or mistake." *Id*. at 641-42 (quoting *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3$^d$ Cir.1953)). If the debtor truly was unaware of her claim at the time of filing, it would be unfair to apply judicial estoppel.

This case is different from other instances where litigants have been judicially estopped

---

[2]Similarly to the Seventh Circuit, judicial estoppel may be invoked under state law where "(1) the later position is clearly inconsistent with the earlier position; (2) the facts at issue are the same in both cases; and (3) the party to be estopped convinced the first court to adopt its position." *Riccitelli v. Broekhuizen*, 227 Wis.2d 100, 111–12, 595 N.W.2d 392 (1999).

from asserting facts inconsistent with statements in prior proceedings that resulted in settlements. In *Kale v. Obuchowski*, 985 F.2d 360, 361-62 (7th Cir. 1993), a party was judicially estopped from asserting an interest in property in a bankruptcy matter because he had denied any interest in the same property during his state court divorce proceedings. In another case, the debtor was judicially estopped from changing his position and contending that unpaid portions of his debt were dischargeable after previously entering a compromise in which he agreed to the nondischargeability of the obligation. *In re Dunkley*, 221 B.R. 207 (Bankr. N.D. Ill. 1998). These situations bear no resemblance to the instant case. Therefore, the doctrine of judicial estoppel in inapplicable to these proceedings.

    A separate order denying both parties's motions for summary judgment will be entered and further proceedings will be scheduled.

May 5, 2015

                                                Margaret Dee McGarity
                                                United States Bankruptcy Judge